## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **RONALD GEATHERS,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:14-cv-00850-WSD-AJB** |
| **v.** | : | |
| | : | |
| **BANK OF AMERICA, N.A., and** | : | |
| **BAYVIEW LOAN SERVICING, LLC ,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Presently before the Court is Defendants' motion to dismiss the complaint for
failure to state a claim, [Doc. 21], which the Court has indicated it intends to treat as a
motion for summary judgment, [Doc. 26], and Plaintiff's motion for discovery and
motion to hold Defendants' motion for summary judgment in abeyance, [Doc. 28].  For
the reasons set forth below, the undersigned **RECOMMENDS** to the District Judge
that the motion to dismiss / construed motion for summary judgment be **GRANTED**,
[Doc. 21], and that Plaintiff's motion for discovery and motion to hold Defendants'
motion for summary judgment in abeyance be **DENIED AS MOOT**, [Doc. 28].

AO 72A
(Rev.8/8
2)

## I.     Background

### A.     Facts[1]

On July 23, 2010, Plaintiff Ronald Geathers obtained a thirty-year residential mortgage loan from Fidelity Bank d/b/a Fidelity Bank Mortgage ("Fidelity") in the principal amount of $186,397.00, at an interest rate of 4.750 percent per year, for the purchase of residential property located at 610 Vista Terrace, Stone Mountain, Georgia 30087 (the "Property").  [Doc. 16 ¶¶ 4, 8; Doc. 16-1 at 2; Doc. 27 ¶¶ 1, 2].  In connection with the loan, Plaintiff executed a promissory note and a security deed naming Fidelity as "Lender."[2]  [Doc. 16 ¶ 9; Doc. 16-1 at 2-3; Doc. 16-2 at 2; Doc. 27 ¶¶ 1, 2].  The security deed also named Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fidelity and its successors and assigns and as the grantee or beneficiary of the deed to secure debt, and it granted MERS, "solely as nominee for Lender and Lender's successors and assigns," with power of sale over the

---

[1]     For the purposes of this section of this Report and Recommendation ("R&R"), the Court relies on the statements of material fact to which Plaintiff has expressly admitted, the loan documents incorporated by reference into Plaintiff's complaint and amended complaint, and, to the extent that they do not conflict with this evidence, the well-pleaded factual allegations stated in the amended complaint. [*See* Docs. 1, 16, 27, 29].

[2]     The security deed was recorded at Deed Book 22070, Page 263, of the DeKalb County, Georgia, real estate records, on August 2, 2010.  [Doc. 16-2 at 2].

Property.  [Doc. 16 ¶ 9; Doc. 16-2 at 2; Doc. 27 ¶ 3].  Under the terms of the note, Plaintiff was required to make monthly loan payments of $972.33 in principal and interest, with a monthly escrow payment in the amount of $467.13, for a total monthly mortgage payment in the amount of $1,439.46.  [Doc. 27 ¶ 8].

The language in the note and security deed placed certain limitations on the lender's ability to immediately accelerate the debt and foreclose on the Property in the event of Plaintiff's default.  [Doc. 16 ¶ 14].  Section 6(B) of the note ("Default") provides:

> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, <u>except as limited by regulations of the Secretary</u> in case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.  <u>In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults</u>.  This Note does not authorize acceleration when not permitted by HUD regulations.  As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

[*Id*. ¶ 16; Doc. 16-1 at 3 (underlining added in complaint)].  Section 9 of the security deed contains similar provisions:

> **(a) Default.**  Lender may, <u>except as limited by regulations issued by the Secretary</u> in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if: (i) Borrower

3

defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment; or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

. . .

> **(d) Regulations of HUD Secretary.**  <u>In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary</u>.

[Doc. 16 ¶ 17; Doc. 16-2 at 5-6 (underlining added in amended complaint)].

Title 24 of the Code of Federal Regulations provides in relevant part that "[i]t is the intent of the Department [of Housing and Urban Development ("HUD")] that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed."   24 C.F.R. § 203.500.   The regulations further require that "[b]efore initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met."  24 C.F.R. § 203.606(a).  Those requirements include, among other things, that [t]he mortgagee must have a face-to-face interview with the [borrower], or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid."  24 C.F.R. § 203.604(b).  A reasonable attempt by the mortgagee to arrange such a meeting is considered to consist of at least one letter sent

4

by certified mail to the borrower in addition to at least one trip to visit him at the mortgaged property, unless the property is located more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.  24 C.F.R. § 203.604(d).

In or around November 2012, Plaintiff began having difficulty meeting his payments on the loan, and he defaulted.  [Doc. 16 ¶ 12].  On December 17, 2012, Defendant Bank of America, N.A. ("BANA"), stating that it was acting on behalf of the holder of Plaintiff's note, sent Plaintiff a Notice of Intent to Accelerate and Foreclose.[3] [Doc. 16 ¶ 13; Doc. 16-5 at 2].  The notice stated, among other things, that Plaintiff was in default of the terms of the note and security deed, with the September 2012 payment past due, and that Plaintiff must pay $2,976.16 by January 26, 2013, or the loan would be accelerated and foreclosure proceedings would be commenced.  [Doc. 16-5 at 2;

---

[3]	Plaintiff incorrectly describes the letter as providing him with notice of default and acceleration of the debt.  [Doc. 16 ¶ 13].  The letter, however, provides only a notice of intent to accelerate the debt, not a notice that it had in fact been accelerated.  [Doc. 16-5 at 2].  The court's duty to accept the facts in the complaint as true does not require it to accept conclusory allegations where the allegations contradict the exhibits; "[i]ndeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

5

Doc. 27 ¶ 9; Doc. 29 ¶ 9]. Plaintiff requested mortgage relief assistance from BANA but was denied. [Doc. 16 ¶ 12].

MERS executed an assignment of the security deed in favor of BANA on March 26, 2013.[4] [Doc. 16 ¶ 10; Doc. 16-3 at 2]. Plaintiff was notified by letter dated May 10, 2013, that the ownership of his loan had been transferred to BANA on May 1, 2013.[5] [Doc. 16-4 at 2-3]. The notice also identified BANA as the servicer. [Doc. 16-4 at 2].

BANA provided Plaintiff with additional notices of default and intent to accelerate the loan and foreclose via letters dated September 16, 2013, and October 25, 2013.[4] [Doc. 16 ¶ 13; Doc. 16-5 at 4-8]. On October 29, 2013, BANA

---

[4]     The assignment was recorded at Deed Book 23683, Page 649, of the DeKalb County, Georgia, real estate records, on April 5, 2013. [Doc. 16-3 at 2].

[5]     Although Plaintiff attaches a letter from BANA as proof of a statement that servicing rights were assigned to BANA on May 1, 2013, the letter in fact identifies BANA as the servicer of Plaintiff's loan and states that the *ownership* of Plaintiff's loan changed as of May 1, 2013. [*Compare* Doc. 16 ¶ 11 *with* Doc. 16-4 at 2-3]. Additionally, Plaintiff stated in a letter that he attached to his original complaint that BANA began servicing his loan in late 2012, [Doc. 1-12 at 1], further indicating that BANA was already servicing Plaintiff's loan as of May 1, 2013.

[4]     Here, too, Plaintiff incorrectly describes the letters as providing him with notice of default and acceleration of the debt. [Doc. 16 ¶ 13]. The letters, however, provide only a notice of *intent* to accelerate the debt, not a notice that it had in fact been accelerated. [Doc. 16-5 at 4-8].

6

wrote to Plaintiff that he was not eligible for FHA Home Retention Options because it was unable to verify his loss of income or increase in expenses.  [Doc. 1-3 at 1].

On January 13, 2014, Plaintiff sent a letter to BANA requesting "the identity of the secured creditor on his loan, verification of the alleged debt, and a detailed accounting."  [Doc. 16 ¶ 23].  BANA responded on January 31, 2014, advising Plaintiff, among other things, that the "investor" on Plaintiff's loan was BANA. [Doc. 16 ¶ 24].

On March 24, 2014, BANA assigned the security deed to HUD.[5]  [Doc. 27 ¶ 6; Doc. 29 ¶ 6].  On April 1, 2014, HUD assigned the security deed to Defendant Bayview Loan Servicing, LLC ("Bayview").[6]  [Doc. 27 ¶ 7; Doc. 29 ¶ 7].

On April 10, 2014, Plaintiff received notice from Bayview that the servicing rights to his loan had been transferred to Bayview from BANA, effective April 1, 2014. [Doc. 16 ¶ 25; Doc. 16-6 at 2].  On April 24, 2014, Bayview provided Plaintiff with a notice of default.  [Doc. 16 ¶ 26; Doc. 16-7 at 2].  The notice stated that it was "a formal demand to pay $24,658.30," and that "[i]f the default, together with additional

_____

[5]     The assignment was recorded at Deed Book 24389, Pages 37-38, of the DeKalb County, Georgia, real estate records, on May 22, 2014.  [Doc. 27 ¶ 6].

[6]     The assignment was recorded at Deed Book 24389, Pages 39-40, of the DeKalb County, Georgia, real estate records, on May 22, 2014.  [Doc. 27 ¶ 7].

AO 72A
(Rev.8/8
2)

payments that subsequently become due, is not cured by 05/24/2014," Bayview would "take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property." [Doc. 16 ¶ 26; Doc. 16-7 at 2]. There has been no actual exercise of the power of sale, and no foreclosure sale of the Property has taken place. [Doc. 27 ¶ 16; Doc. 29 ¶ 16].

**B.     Procedural History**

On March 25, 2014, Plaintiff initiated this action by filing a *pro se* complaint against BANA. [Doc. 1]. Thereafter, Plaintiff secured counsel, [Doc. 8], and, upon the Court's leave, [Doc. 15], filed an amended complaint, [Doc. 16].

The amended complaint again names BANA and also adds Bayview as a party defendant. [Doc. 16]. In the amended complaint, Plaintiff avers that BANA had no right to declare Plaintiff's loan in default or accelerate the debt in December 2012 because the first date on which BANA has alleged that it acquired any rights to the Property was March 26, 2013, [*id.* ¶ 15]; that BANA was incorrect when it advised him on January 31, 2014, that BANA was the investor in Plaintiff's loan and that the investor at the time was in fact Government National Mortgage Association ("Ginnie Mae"), [*id.* ¶ 24]; and that neither BANA nor Bayview had the right to accelerate the loan or initiate foreclosure proceedings because neither BANA nor

8

Bayview ever had a face-to-face interview with Plaintiff or made any effort to arrange such a meeting.  [*id.* ¶ 27].  He contends that the facts he alleges in the amended complaint give rise to five counts against both defendants—declaratory relief, (Count One), [*id.* ¶¶ 38-45]; preliminary injunctive relief, (Count Two), [*id.* ¶¶ 46-58]; breach of contract, (Count Three), [*id.* ¶¶ 59-63]; negligence per se, (Count Four), [*id.* ¶¶ 64-68]; violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, (Count Five), [*id.* ¶¶ 69-75]—and to a sixth count against BANA for violation of Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, (Count Six), [*id.* ¶¶ 76-80].

On October 23, 2014, Defendants filed the motion to dismiss that is presently before the Court.  [Doc. 21].  They argued that all of the claims based upon Defendants' alleged failure to conduct a face-to-face interview with Plaintiff were due to be dismissed because certain letters showed that BANA had substantially complied with the face-to-face meeting requirement or should be excused from such compliance, and that Plaintiff had otherwise failed to plead a plausible claim for relief.  [Doc. 21-1].  In his response brief, Plaintiff pointed out that Defendants' arguments relied in large part upon letters that had not been sworn or authenticated by affidavit and that had not been shown to have been delivered to Plaintiff, and he argued that the Court could not

AO 72A
(Rev.8/8
2)

consider the letters without converting the motion to dismiss to a motion for summary judgment and allowing him time to present pertinent material. [Doc. 22 at 3]. The Court agreed and gave the parties a limited period of time within which to develop the challenged factual assertions before it proceeded with adjudication of Defendants' motion. [Doc. 26 at 11-12]. Defendants filed a statement of undisputed material facts on April 28, 2015. [Doc. 27]. On May 19, 2015, Plaintiff filed a response to the statement of material facts, [Doc. 29], and the motion for discovery and motion to hold Defendants' motion for summary judgment in abeyance, which are presently pending before the Court, [Doc. 28]. Defendants oppose Plaintiff's motions. [Doc. 30].

The time for briefing having run on all of the pending motions, the undersigned now enters this R&R for the District Judge's consideration.

## II.   *Legal Standards*

### A.   *Motion to Dismiss*

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the factual allegations of a complaint must generally be taken as true when ruling on a motion to

AO 72A
(Rev.8/8
2)

dismiss, a court should not accept "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). While a complaint need not contain detailed factual allegations, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth."). Rather, plaintiffs are required to make factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Complaints must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). A complaint also may be dismissed pursuant to Rule 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Generally, the Court must convert a motion to dismiss to a motion for summary judgment if it considers materials outside of a complaint. *See* Fed. R. Civ. P. 12(d);

AO 72A
(Rev.8/8
2)

*Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). However, the Court need not make this conversion when considering a document attached to the complaint or to a motion to dismiss if "the attached document is (1) central to the plaintiff's claim and (2) undisputed. *Day*, 400 F.3d at 1276; *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 923 n.1 (11th Cir. 1997) ("Documents attached to and incorporated into the complaint were properly before the district court on a motion to dismiss."); *Clark v. Bibb Cnty. Bd. of Educ.*, 174 F. Supp. 2d 1369, 1370 (M.D. Ga. 2001) ("A court evaluating a motion to dismiss for failure to state a claim upon which relief can be granted . . . may . . . consider any attachments to the complaint, matters of public record, orders, and items appearing in the record."). A document is "undisputed" when its authenticity is unchallenged. *Day*, 400 F.3d at 1276. Also, "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the Court] may consider such a document provided it meets the centrality requirement." *Id.*

12

**B.      Summary Judgment**

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  As such, summary judgment is appropriate only after there has been "adequate time for discovery."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[S]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986).

The party moving for summary judgment carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."    *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp.*, 477 U.S. at 323). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  The moving party may also meet its burden by pointing out that there is an absence of evidence to support an element of the case on which the nonmoving party bears the burden of proof. *Celotex*, 477 U.S. at 325. "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that

13

there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Where the nonmoving party responds by "show[ing] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify [his] opposition, the court may . . . defer considering the motion or deny it; . . . allow time to obtain affidavits or declarations or to take discovery; or . . . issue any other appropriate order." Fed. R. Civ. P. 56(d); *see also Wingster v. Head*, 318 Fed. Appx. 809, 813 (11th Cir. Mar. 9, 2009) (stating that the rule now designated as Rule 56(d) allows a district court to hold a motion for summary judgment in abeyance and allow for additional discovery when the party opposing the motion makes a sufficient showing of the need for the additional discovery). In applying this rule, courts, including this one, have held that a party opposing a summary judgment motion in this fashion "must conclusively justify his entitlement to the shelter of Rule 56[(d)] by presenting specific facts explaining the inability to make a substantive response." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012). The party seeking to use Rule 56(d) "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the

14

movant's showing of the absence of a genuine issue of fact." *Wallace v. Brownell Pontiac-GMC Co.*, 703 F.2d 525, 527 (11th Cir. 1983) (internal punctuation omitted); *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1294 (N.D. Ga. 2009) (Martin, J., *adopting* Baverman, M.J.) (same); *accord SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980).[7]   The decision to grant or deny a Rule 56(d) motion lies within the sound discretion of the trial judge. *Smith v. Fla. Dep't of Corrs.*, 713 F.3d 1059, 1063 (11th Cir. 2013); *Burks v. Am. Cast Iron Pipe Co.*, 212 F.3d 1333, 1336 (11th Cir. 2000).

Absent justification for a Rule 56(d) order, the nonmoving party is required to respond to the motion for summary judgment by going "beyond the pleadings" and presenting competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.  "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*,

---

[7]    In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev.8/8
2)

550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson*, 477 U.S. at 252; *see also EPL Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999); *Duke v. Cleland*, 884 F. Supp. 511, 514 (N.D. Ga. 1995) (Freeman, J.). "If the record presents disputed issues of material fact, the Court may not decide them; rather, it must deny the motion and proceed to trial." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001)).

## III.    Discussion

Defendants move for judgment on each of Plaintiff's claims. First, the Court will consider Defendants' arguments that there is no genuine issue of material fact as to whether they either substantially complied with the face-to-face meeting requirement or were excused from doing so, an issue implicated in Counts One through Five. The

16

Court will then consider Defendants' challenges to the sufficiency of the pleadings as to each of the claims alleged in the amended complaint.

**A.    *Substantial Compliance or Excuse from Compliance with Face-to-Face Meeting Requirement***

**1.    *Evidence of Substantial Compliance***

Counts One through Five of the amended complaint are all grounded, at least in part, on Plaintiff's allegation that Defendants declared the loan in default and threatened acceleration and foreclosure without first complying with the HUD regulation requiring a "face-to-face" interview with Plaintiff, or making a "reasonable effort" to arrange such a meeting before three full monthly installments due on the mortgage were unpaid.  [*See* Doc. 16 ¶¶ 42-44, 55, 60-63, 65-68, 73].  In the motion to dismiss, Defendants argued, among other things, that those claims fail because on December 19, 2012, BANA made a reasonable effort to set up a face-to-face meeting with Plaintiff by sending him a letter stating that it would be sending a representative from JMA Services to meet with him at his home to collect documents that would help BANA review his loan and assistance options.  [Doc. 21-1 at 12-14; Doc. 21-2 at 2-3].  In response, Plaintiff pointed out that the letter was not sworn or authenticated by affidavit and that there was no evidence that it was actually delivered to him. [Doc. 22 at 3].  The Court agreed with Plaintiff, remarking that even if the Court were

17

to accept BANA's assertion that the letter it relied upon was in fact a letter BANA wrote to Plaintiff, there was nothing in the record indicating that the letter was mailed or delivered to Plaintiff.  [Doc. 26 at 11 [citing Doc. 21-2]].  Given the simplicity of the issue and its centrality to the case, however, the Court directed the parties to develop the factual assertions associated with the face-to-face meeting prior to the Court's adjudication of Defendants' motion to dismiss.  [Doc. 26 at 11-12].

In response to the Court's Order, Defendants submitted statements of material fact supported by the affidavit of Melissa Davidson, Assistant Vice President, Operations Team Manager, Mortgage Resolution Team for BANA, and documents Ms. Davidson stated had been made and kept in the course of BANA's regular business practices.  (Def. ¶¶ 10-12[8]; Aff. & Decl. of Melissa Davidson in Supp. of Def. Bank of Am., N.A.'s Mot. for Summ. J. ("Bank Aff.") [Doc. 27-1] ¶¶ 2, 12-14 (incorporating *id*. at 45-51)).  In the statements of material fact, BANA states that it retained a third-party vendor, J.M. Adjustment Services, LLC ("JMAS") to send letters on behalf of BANA and to coordinate a face-to-face meeting with Plaintiff "in compliance with

---

[8]     Paragraph numbers preceded by "Def." refer to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, [Doc. 27], and Plaintiff's responses to the statements of material fact will be designated as "Pl. Resp.," [Doc. 29].

18

certain servicing requirements promulgated by HUD pursuant to 24 C.F.R. § 203.604," (Def. ¶ 10), and that JMAS, acting at BANA's request, sent the letter of December 19, 2012, stating that BANA would be sending a representative from JMA Services to meet with him at his home to collect documents that would help BANA review Plaintiff's loan and assistance options, (Def. ¶ 11 & Bank Aff., Exh. 8 [Doc. 27-1 at 47]). BANA further asserts that on December 29, 2012, representatives with JMAS visited Plaintiff at the Property to discuss foreclosure alternatives with him. (Def. ¶ 12, Bank Aff., Exh. 9 [Doc. 27-1 at 49-51]).

In response to BANA's statement of material facts, Plaintiff states that he "is without sufficient knowledge to be able to admit or deny" the assertion that BANA engaged JMAS to carry out its responsibilities under 24 C.F.R. § 203.604 or that JMAS sent the December 19 letter to him. (Pl. Resp. ¶¶ 10-11). He further asserts that "JMA services has never met with the Plaintiff to discuss foreclosure alternatives," and he proffers his own affidavit stating as much. (*Id*. ¶ 12; Aff. of Ronald Geathers ("Pl. Aff.") ¶ 12 ("[N]o one representing BANA, including JMA Services, ever visited my home to interview me or collected any documents from me in order to assist BANA in reviewing my loan for assistance options. To date, neither BANA nor Bayview have conducted a face-to-face meeting with me at my home.")).

19

The Court has carefully examined both parties' evidentiary submissions and finds little that advances the case. BANA's proffer relies on hearsay: while it proffers the testimony of a custodian stating that the documents BANA relies upon were "true and correct" copies of the documents supplied to it by JMAS, (Bank Aff. ¶¶ 13-14), and "were made and kept by the regularly conducted business activity as a regular practice by BANA," (*id*. ¶ 2), it provides no such authentication by a custodian at JMAS, the entity it contends created the documents, (*see id.* ¶¶ 13-14). Defendants have therefore failed to show that the documents fall within the business-records exception to the rule against hearsay. *See* Fed. R. Evid. 803(6). Additionally, while BANA suggests that the letter of December 19, 2012, was "successfully mailed" via Federal Express, which it appears to consider the functional equivalent of the certified mailing required under 24 C.F.R. § 203.604(d), (Bank Aff. ¶ 12), shows what is purported to be a copy of shipping label for the envelope containing the letter, (*id*., Ex. 8 [Doc. 27-1 at 46]), and asserts that proof of delivery was maintained in BANA's files, (Bank Aff. ¶ 13), it provides no tracking information or other documentation showing that the package was actually dispatched or delivered. Similarly, while a record entitled HomeSaver - Workout Notes indicates that someone attempted to visit property associated with a loan identified by a number ending in 7947 on December 29, 2012, there is nothing in

20

the document showing that the visit attempt was associated with the Property, that a face-to-face meeting in fact took place, or that anyone discussed foreclosure alternatives with Plaintiff.  (*See* Bank Aff., Exh. 9 [Doc. 27-1 at 49] (cited in support of Def. ¶ 12)).  Indeed, the document appears to state that the follow-up visit was not completed.  (*See* Bank Aff., Exh. 9 [Doc. 27-1 at 49] ("Follow Up Complete: No"; "Docs Collected: NO"; "Occupancy: Unknown")).  For these reasons, the undersigned finds that Defendants have failed to set forth evidence showing that they had a face-to-face meeting with Plaintiff with Plaintiff to explore alternatives to foreclosure or made a reasonable effort to arrange such a meeting.

To be sure, the Court finds it noteworthy that Plaintiff's affidavit does not include an affirmative statement that he never received the letter BANA alleges that its vendor sent.  (*See* Pl. Aff., *passim*).  However, Plaintiff, via his attorney, responded to Defendants' statements of material fact with a statement that Plaintiff is "without sufficient knowledge to be able to admit or deny" BANA's assertion that it engaged JMAS to send him the letter, (Pl. Resp. ¶¶ 10, 11), thus implying that he did not receive it.  *See* Fed. R. Civ. P. 11(b)(3)-(4) (providing that an attorney has the obligation to conduct a reasonable investigation before making factual representations before the Court).  Moreover, when considering a motion for summary judgment, the Court must

AO 72A
(Rev.8/8
2)

view the evidence and factual inferences in the light most favorable to the nonmoving party. *Vaughan v. Cox*, 343 F.3d 1323, 1326 n.1 (11th Cir. 2003); *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) ("[O]n summary judgment . . . [t]he district court should resolve all reasonable doubts about the facts in favor of the non-movant.") (quotation marks and citations omitted).

For all of these reasons, the undersigned concludes that a genuine issue of material fact remains as to whether Defendants complied or substantially complied with the face-to-face meeting requirement set forth in 24 C.F.R. § 203.604.  It is therefore **RECOMMENDED** that the District Judge decline to grant summary judgment to Defendants on that ground at this time.

### 2.     *Excuse from Compliance*

Defendants also alleged in the motion to dismiss that on June 21, 2013, BANA offered Plaintiff a Trial Payment Plan ("TPP") under the Federal Housing Administration's Home Affordable Modification Program ("FHA-HAMP"), that Plaintiff declined the TPP offer, and that it is thus clear that any face-to-face meeting would have been futile.  [Doc. 21-1 at 14-15].  Defendants liken the case to *U.S. Bank v. Stewart*, No. 04CV8649, 2008 WL 4803637 (Ohio Com. Pl. 2008), suggesting that they, like the bank in *Stewart*, should be excused from compliance with the face-to-face

AO 72A
(Rev.8/8
2)

meeting requirement under § 203.604(c)(3) because Plaintiff had "clearly indicated that he will not cooperate in the interview." [*Id*. at 15].

Here, too, the Court sustained Plaintiff's objections to Defendants' reliance on unauthenticated documents and directed the parties to develop the factual assertions and supporting evidence associated with the alleged TPP offer and refusal. [Doc. 26 at 11-12]. Defendants also responded to this portion of the Court's Order by submitting statements of material fact supported by the Ms. Davidson's affidavit and documents Ms. Davidson stated had been made and kept in the course of BANA's regular business practices. (Def. ¶¶ 13-15; Bank Aff. ¶¶ 2, 15-17 & Exhs. 10-12 [Doc. 27-1 at 52-86]). In the statements of material fact, BANA again states that on June 21, 2013, Plaintiff was offered a TPP under the FHA-HAMP. (Def. ¶ 13; Bank Aff. ¶ 15 & Exs. 10-11 [Doc. 27-1 at 52-83]). BANA further alleges that it sent the TPP to Plaintiff and that it was delivered to the Property, (Def. ¶ 13; Bank Aff. ¶ 15 & Exhs. 10-11 [Doc. 27-1 at 52-83]); Plaintiff was instructed that in order to accept the TPP, he must return the signed TPP by July 21, 2013, and send three payments in the amount of $1,156.21 in August, September, and October 2013, (Def. ¶ 13; Bank Aff. ¶ 15 & Exhs. 10-11 [Doc. 27-1 at 52-83]); on July 16, 2013, BANA received a phone call from Plaintiff's authorized third party, Cheryl Geathers, declining the TPP, (Def. ¶ 14; Bank Aff. ¶ 16

23

& Exh. 11 [Doc. 27-1 at 65-83]); on July 17, 2013, BANA called Plaintiff and confirmed that he wished to decline the TPP because the payments were not affordable, (Def. ¶ 14; Bank Aff. ¶ 16 & Exh. 11 [Doc. 27-1 at 65-83]); and on August 29, 2013, BANA sent Plaintiff a letter confirming that he had declined the TPP, (Def. ¶ 15; Bank Aff. ¶ 17 & Exh. 12 [Doc. 27-1 at 84-86]).

In response to BANA's statement of material facts, Plaintiff denies that he or authorized third party Cheryl Geathers called to decline the TPP, and he states that BANA never called him to confirm that he wished to decline the TPP. (Pl. Resp. ¶ 14; Pl. Aff. ¶ 12). Plaintiff states that he "is without sufficient knowledge to be able to admit or deny the truth" of Defendants' other statements. (Pl. Resp. ¶¶ 13, 15). Plaintiff does admit, however, that "several months" after he received the December 2012 notice of intent to foreclose and first requested a loan modification, BANA offered him a TPP, the details of which he does not recall, and that because he found the amount still to be unaffordable, he did not respond at all and simply allowed the TPP to lapse by virtue of not executing and returning the TPP or making the adjusted payments offered in the TPP. (Pl. Aff. ¶¶ 9-12). He also testifies that he continued to seek mortgage relief assistance from BANA but was denied a modification he could afford. (*Id.* ¶ 12).

24

The Court is not persuaded by Defendants' factual or legal presentation.  First, the Court questions the extent to which Defendants' evidence supports its statements of material fact in that it has been unable to locate in the supporting documents any receipt of delivery of the letters associated with the TPP offer, and while Defendants indicate in their statements of material fact that Cheryl Geathers called to decline the TPP, (Def. ¶ 14), the Court notes that the supporting documents do not appear to reflect contact with Cheryl Geathers but instead appear to show that a person by the name of Dorothy Kennedy declined a TPP, (Bank Aff., Exh. 11 [Doc. 27-1 at 71, 73, 80]).  The undersigned therefore finds little in Defendants' evidentiary proffer that would support a determination that Defendants had carried their burden of identifying materials that demonstrate the absence of a genuine issue of material fact.

The undersigned also finds little legal support for Defendants' argument. Notably, Defendants rely exclusively on *Stewart*, which is an unpublished trial-court case and therefore is at most of persuasive value.[9]  Defendants also fail to explain why

_____

[9]     The case is also arguably not properly before the Court as it is not attached to or incorporated within the brief and does not appear to be included within the standard Westlaw plan or otherwise readily available on the Internet.  *See* 11th Cir. R. 36-2 (Unpublished Opinions).  Defendants also failed to supply a pinpoint citation, [Doc. 21-1 at 15], in violation of this Court's Local Rules, LR 5.1F, NDGa ("All

25

the Court should find the *Stewart* opinion—which does not involve the rejection of a TPP offered in accordance with FHA-HAMP—persuasive here.[10] [*See* Doc. 21-1 at 15].  Moreover, the Court's own review of *Stewart* has revealed that it is materially distinguishable from the case at hand:  in *Stewart*, the bank showed that it had repeatedly explained the borrower's obligations under the loan and that the borrower responded by continuing to refuse to pay the full amount and making statements such as, "Apparently you do not keep good records and it is obvious that your right hand does not know what your left hand is doing," "Yet when dealing with amateurs one cannot be too careful I am not late with any mortgage payments . . . I strongly recommend that you consult with your legal department before you do anything else!!!" "Apparently you're hardheaded or just a bit slow . . . You might want to have a lawyer explain to you what a trivial breach is an why you have not been damaged . . . .  Otherwise, good luck foreclosing as I will have complete defenses and

------

citations shall include the specific page or pages upon which the cited matters appear.").

[10]    In *Stewart*, after the borrower unilaterally began omitting the escrow amounts from his mortgage payments in conflict with his loan agreement (insisting on paying the taxes and insurance bills directly), and the bank eventually initiated foreclosure proceedings, the borrower asserted that the foreclosure was wrongful because the bank had not complied with the face-to-face meeting requirement set forth in 24 C.F.R. § 203.604(b).  *Stewart*, 2008 WL 4803637 at *2, 8, 10.

26

claims against you for continued harassment and possibly total breach," all of which the court found contradicted the borrower's assertion in litigation that he would have cooperated in a face-to-face meeting.  *Stewart*, 2008 WL 4803637 at *2, 8, 10-11. Here, in contrast, the facts—viewed in the light most favorable to Plaintiff—are simply that Plaintiff did not accept a TPP offer he did not believe he could afford, which does not preclude the possibility that a face-to-face meeting could have led to a better understanding of Plaintiff's circumstances and thus to an alternative TPP that could have prevented foreclosure.  It also bears noting that under the plain language of 24 C.F.R. § 203.604(b), a modification arranged through means other than a personal interview does not negate the face-to-face meeting requirement. 24 C.F.R. § 203.604(b) ("If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . . .").

For all these reasons, the undersigned concludes that a genuine issue of material fact remains as to whether Plaintiff would have cooperated in the face-to-face interview had he been given the opportunity.  It is therefore **RECOMMENDED** that the District Judge decline to grant summary judgment to Defendants on that basis.

27

AO 72A
(Rev.8/8
2)

### 3. *Motion to Permit Discovery and Hold Defendants' Motion for Summary Judgment in Abeyance*

Plaintiff argued in the brief supporting his motions to permit discovery and to hold Defendants' motion for summary judgment in abeyance that he needs to conduct discovery in order to develop factual support showing that Defendants did not conduct a face-to-face meeting after default. [Doc. 28 at 3]. Because the undersigned recommends to the District Judge that he refrain from disposing of any Plaintiff's claims on those grounds, it is likewise **RECOMMENDED** that the motions to permit discovery and to hold Defendants' motion for summary judgment in abeyance as to that issue be **DENIED AS MOOT**. [Doc. 28].

### B. *Failure to State a Plausible Claim for Relief*

Having determined above that Defendants have not established that they are entitled to summary judgment on the claims arising from their alleged failure to meet their obligations under 24 C.F.R. § 203.604(b) on grounds of substantial compliance or excuse from compliance, the Court turns to the remaining arguments asserted in the motion to dismiss. [Doc. 21]. Defendants move for dismissal of each count of the amended complaint, contending that all of the claims are insufficiently pleaded. The Court considers each count in its logical order.

28

### 1.    Breach of Contract (Count Three)

To assert a claim for breach of contract under Georgia law, a plaintiff must show (1) a valid contract; (2) material breach of its terms; and (3) resultant damages (4) to the party who has the right to complain about the contract being broken.    *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014); *Duke Galish, LLC v. Manton*, 308 Ga. App. 316, 320, 707 S.E.2d 555, 559 (2011); *Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278, 279, 469 S.E.2d 712, 713 (1996).

Plaintiff asserts that Defendants breached the note and security deed by failing to conduct a face-to-face meeting with him before "pursu[ing] the power of sale," and, as a result, "Plaintiff has suffered mental anguish, emotional pain and suffering and damage to his credit and reputation . . . ."  [Doc. 16 ¶¶ 60-63].  He also alleges that Defendants' breach "changed a substantive right . . . by denying [him] the opportunity to cure the default before the total outstanding amount of debt grew to a level that prevented [him] from being able to cure in order to prevent the acceleration of the loan" and that the breach further damaged him by making it necessary for him to hire counsel and incur costs of litigation.  [*Id.*].[11]

_____

[11]     Plaintiff also argues in his response to Defendants' motion to dismiss that "due to BANA's premature acceleration of the debt, Plaintiff is unable to remit partial payments on the loan, causing him to become further and further behind," and that

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's breach-of-contract claim because the HUD regulations cannot form the basis for a breach-of-contract claim, [Doc. 21-1 at 11 n.6], and that even if such a claim were not precluded as a matter of law, the claim would nevertheless fail because any damage Plaintiff sustained was caused not by Defendant's failure to conduct a face-to-face interview but rather by his failure to make the required loan payments, [*id.* at 16]; there has been no exercise of the power of sale and thus, no damage to Plaintiff, [*id.* at 16 & n.7]; and the security deed contains a clause allowing for reinstatement, thereby negating any damages claim, [*id.* at 16].

---

advertisement of the Property for foreclosure sale has "affected the market value" of the Property.  [Doc. 22 at 9].  A party cannot amend a complaint by asserting new facts or theories in the brief responding to a motion to dismiss.  *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (per curiam); *Long v. Satz*, 181 F.3d 1275, 1279-80 (11th Cir. 1999) (per curiam); *Brown v. J.P. Turner & Co.*, No. 1:09-CV-2649-JEC, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) (Carnes, J.) (deeming it "plainly inappropriate" to raise allegations for the first time in response to a motion to dismiss).  This is particularly true where, as here, Plaintiff is represented by counsel who could have filed a motion to amend the complaint under Rule 15 of the Federal Rules of Civil Procedure.  *See Long*, 181 F.3d at 1279 (stating that "[f]iling a motion is the proper method to request leave to amend a complaint," and holding that denial of a request to amend contained within a memorandum filed in opposition to a motion to dismiss was not erroneous).  Thus, the claims are not properly before the Court, and the undersigned will not consider them.

30

As to the argument that the HUD regulations cannot form the basis for a breach-of-contract claim, the Court cannot agree.  Although they cite the case for other principles, Defendants fail to recognize that in *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130, 1132 (11th Cir. 2014), the United States Court of Appeals for the Eleventh Circuit has made clear that HUD regulations may be generally incorporated into a security deed as conditions precedent to the power to accelerate and the power of sale, and, as a consequence, violation of those regulations may indeed underpin a breach-of-contract claim.  In *Bates*, the plaintiff, like Plaintiff here, had failed to make the required payments on her federally insured mortgage, yet asserted a claim for breach of contract arising from the defendant's alleged failure to comply strictly with certain HUD regulations incorporated into her deed, including the face-to-face meeting requirement, as conditions precedent to the power to accelerate and the power of sale. *Bates*, 768 F.3d at 1129-30; *Bates v. J.P. Morgan Case Bank, N.A.*, No. 4:12-CV-43 (CDL), 2013 WL 5755585, at *5 (M.D. Ga. Oct. 23, 2013).  The district court found that a genuine issue of material fact existed as to whether the defendant made reasonable efforts to arrange a face-to-face interview with the plaintiff prior to acceleration and publication of the foreclosure sale but held that as a matter of law the plaintiff could not recover damages for breach of contract based on the

31

defendant's alleged failure to comply with the HUD provision. *Id*. at *4-5. On appeal, however, the Eleventh Circuit found that language in the security deed stating that the deed "does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary" in fact gave rise to a condition precedent to the defendant's power to accelerate and power of sale that could form the basis of a breach-of-contract action. *Bates*, 768 F.3d at 1132 ("Taken in context, this language clearly makes compliance with HUD regulations a condition precedent to the bank's right to accelerate the debt or exercise the power of sale."). Moreover, when presented with defense arguments that the plaintiff did not have the right to raise the breach-of-contract claim because she had already breached the contract herself, the appeals court noted that requiring the plaintiff first to show that she had not breached the contract would essentially nullify the contract provisions requiring compliance with HUD rules pertaining to acceleration and foreclosure: "such a rule would prohibit any mortgagor from ever enforcing any contract terms governing acceleration and foreclosure, as these terms by definition come into play following a breach." *Bates*, 768 F.3d at 1130 n.3.

Defendants' arguments as to causation and damages are well-taken, however. Damages for mental anguish and emotional pain and suffering cannot be recovered in a breach-of-contract claim. *Cummings v. Prudential Ins. Co. of Am.*,

AO 72A
(Rev.8/8
2)

542 F. Supp. 838, 841 (S.D. Ga. 1982) (under Georgia law, damages for mental suffering arising out of breach of contract, absent breach of a duty independent of contract, are not recoverable); *Davis v. Aetna Cas. & Sur. Co.*, 169 Ga. App. 825, 827-28, 314 S.E.2d 913, 917-18 (1984) ("Misfeasance in the performance of a contractual duty may give rise to a tort action, if the plaintiff alleges an injury independent of the disappointment of the contract benefit and there is a breach of a duty, imposed by law, independent of the contractual breach."), *rev'd in part on other grounds*, 253 Ga. 376, 320 S.E.2d 368 (1984).

The precedent established in *Bates* also makes clear that Plaintiff's claimed economic damages are not traceable to Defendants' alleged breach. "[F]or a mortgagor . . . to succeed, []he must show that the premature or improper exercise of some power under the deed (acceleration or sale) resulted in damages that would not have occurred but for the breach." *Bates*, 768 F.3d at 1132-33. It is undisputed that Plaintiff had already defaulted on his loan obligations when Defendants' alleged breach occurred, (Pl. Aff. ¶ 8), and Plaintiff does not allege any facts to show that a face-to-face meeting would have enabled him to cure the default or would have prevented foreclosure, (*see* Am. Compl., *passim*). Instead, Plaintiff generally alleges that he "requested mortgage relief assistance from BANA but was . . . denied," (Am. Compl. ¶ 12), and admits that

he could not afford even reduced monthly payments Defendants offered him under the TPP, (Pl. Aff. ¶¶ 11-12).  Thus, it is clear that if Defendants reported Plaintiff's default to credit bureaus and pursued the power of sale, they did so as a result of Plaintiff's failure to make his loan payments.

Moreover, in *Bates*, the plaintiff's breach-of-contract claim ultimately failed upon summary judgment because a provision in the security deed allowed the plaintiff to be reinstated—even after foreclosure proceedings were instituted—by paying all of the outstanding monthly payments and associated fees owed, and the court found that the plaintiff had therefore failed to show damages that would not have occurred but for the defendant's breach.  *Id*. at 1133.  As Defendants point out, the same reinstatement provision appears as Section 10 in Plaintiff's security deed:

> Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current . . . .

[Doc. 16-2 at 6]; *Bates*, 768 F.3d at 1133.  Thus, here, as in Bates, "all [Plaintiff] must do, even now, is simply pay all of the outstanding monthly payments and associated fees admittedly owed," and therefore, "[D]efendants' exercise of the power to

AO 72A
(Rev.8/8
2)

accelerate the note could not have caused [Plaintiff] harm . . . ." *Id*.  Consequently,

Plaintiff has failed to plead facts plausibly showing causation or damages.

For all of these reasons, the undersigned **RECOMMENDS** to the District Judge

that he **GRANT** Defendant's motion to dismiss Plaintiff's claim for breach of contract

(Count Three).  [Doc. 21].

### 2.      *Negligence Per Se (Count Four)*

In Georgia, the elements of a negligence claim are: "(1) a legal duty to conform

to a standard of conduct raised by the law for the protection of others against

unreasonable risks of harm; (2) a breach of this standard; (3) a causal connection

between the conduct and the injury; and (4) damages from the breach of duty." *Lowry*

*v. Cochran*, 305 Ga. App. 240, 246, 699 S.E.2d 325, 331 (2010) (alteration omitted)

(quoting *Underwood v. Select Tire*, 296 Ga. App. 805, 808-09, 676 S.E.2d 262, 267

(2009)).  In general, a plaintiff may assert a claim of negligence per se arising from

violations of federal or state statutes as long as (1) the plaintiff falls within the class of

persons the statute was intended to protect; (2) the harm complained of was the same

harm the statute was intended to guard against; and (3) the defendant's violation of the

statute was the proximate cause of the plaintiff's injury.  *McLain v. Mariner Health*

*Care, Inc.*, 279 Ga. App. 410, 411, 631 S.E.2d 435, 437 (2006)

35

Plaintiff contends that BANA and Bayview had a duty to comply with 24 C.F.R. § 203.604(b), that they failed to do so, and that the failure "constitutes negligence per se." (Am. Compl. ¶¶ 65-68). He alleges that as a result, he suffered mental anguish, emotional pain and suffering, damage to his credit and reputation, loss of the opportunity to cure the default before the outstanding debt grew too large to allow him to do so, and he was required to incur the expense of hiring counsel and costs of litigation. (*Id.*).

Defendants contend that Plaintiff cannot establish any claim for negligence arising from the lack of face-to-face interview because no private right of action exists for HUD violations and because Plaintiff cannot show that his damages are attributable to Defendants and not to his own failure to pay the loan. [Doc. 21-1 at 19-20]. Plaintiff, relying on *McLain v. Mariner Health Care, Inc.*, 279 Ga. App. 410, 631 S.E.2d 435 (2006), and *Walter v. Orkin Exterminating Co.*, 192 Ga. App. 621, 385 S.E.2d 725 (1989), argues in response that a duty imposed by HUD regulations is a duty imposed by law and made actionable under O.C.G.A. § 51-1-6. [Doc. 22 at 15-16].

While the cases Plaintiff cites do support his general position that states are authorized to adopt standards from agency regulations and incorporate them into

36

state-law civil causes of action in tort, neither of them establishes that HUD regulations are actionable in negligence. *See McLain*, 279 Ga. App. at 413, 631 S.E.2d at 438 (holding that the complaint's allegations of violations of Medicare and Medicaid rules regulating nursing-home management were sufficient to establish breach of duty in negligence); *Walter*, 192 Ga. App. at 624-25, 385 S.E.2d at 728 (holding that the complaint's allegations of violations of rules regulating pest-control fumigation were sufficient to establish breach of duty in negligence). Additionally, Plaintiff did not assert the negligence claim under O.C.G.A. § 51-1-6 in the amended complaint, [*see* Doc. ¶¶ 65-68], and therefore the Court may not consider the theory. *See supra* n.11 (citing *Fin. Sec. Assurance, Inc.*, 500 F.3d at 1284; *Long*, 181 F.3d at 1279-80; *Brown*, 2011 WL 1882522 at *5).

Courts—including courts in Georgia—widely agree that regulations promulgated under the National Housing Act, such as the face-to-face interview requirement set forth in 24 C.F.R. § 203.604, do not give rise to a private right of action for damages. *See, e.g., Bates*, 768 F.3d at 1130 (noting that "there is no express or implied statutory private right of action for HUD violations"); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977) ("[T]he National Housing Act and the regulations promulgated thereunder deal only with the relations between the mortgagee and the

37

government, and give the mortgagor no claim to duty owed nor remedy for failure to follow."); *McDonald v. Green Tree Servicing, LLC*, No. 13-12993, 2014 WL 1260708, at *5 (E.D. Mich. Mar. 27, 2014) ("Courts have held that there is no private cause of action to enforce HUD regulations, specifically HUD mortgage servicing policies."); *Cornelius v. Bank of Am., N.A.*, Civ. Action No. 1:12-cv-0585-JEC, 2012 WL 4468746, at *6 (N.D. Ga. Sept. 27, 2012) (noting that breach of HUD regulations promulgated under the National Housing Act does not ordinarily provide a private right of action); *Krell v. Nat'l Mortg. Corp.*, 214 Ga. App. 503, 504, 448 S.E.2d 248, 249 (1994) (holding that a violation of HUD regulations did not support a private right of action in tort). As discussed above, Plaintiff has also failed to show that Defendants' alleged failure to conduct a face-to-face meeting with him caused his injuries. *See supra* Part III.B.1.

The undersigned therefore concludes that Plaintiff has failed to plead facts establishing a duty owed to him in negligence or that any such breach was the cause of his alleged injuries. Accordingly, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion to dismiss Plaintiff's negligence claim (Count Four). [Doc. 21].

38

### 3.    *FDCPA (Count Five)*

In Count Five, Plaintiff asserts that Defendants "wrongfully threatened legal action and failed to inform Plaintiff that Plaintiff had a right to a face-to-face meeting and/or failed to arrange such a meeting" and that "BANA misrepresented to Plaintiff that BANA was the investor on Plaintiff's loan, when the true investor . . . was Ginnie Mae," conduct Plaintiff contends violates the FDCPA.  [Doc. 16 ¶¶ 70-75].

In their motion to dismiss, Defendants point out that Plaintiff failed to identify the FDCPA section or sections he believes were violated, and they argue that Plaintiff's claim for a violation of the FDCPA fails because Defendant is not a "debt collector" within the context of the FDCPA, foreclosure is not "debt-collection activity" except with regard to claims raised under 15 U.S.C. § 1692f(6), and Plaintiff has failed to plead a claim under § 1692e, 1692f, or 1692g. [Doc. 21-1 at 21-23].

In his response to the motion to dismiss, Plaintiff cites portions of 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g.  [Doc. 22 at 17].  He also contends that Defendants qualify as debt collectors within the context of the FDCPA because they did not acquire any rights in the note or security deed until after the debt was in default and that their notices demanding payment of the overdue debt constituted "debt collection activity."  [*Id*. at 17-20].

39

The FDCPA was enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010); *see also* 15 U.S.C. § 1692e (prohibiting "[f]alse or misleading representations"). The statute also protects reputable debt collectors from unfair competition and encourages consistent state action to protect consumers from abuses in debt collection. *LeBlanc*, 601 F.3d at 1190. The FDCPA is a strict-liability statute and "thus does not require a showing of intentional conduct on the part of a debt collector; furthermore, a single violation of the statute is sufficient to establish civil liability." *Edwards v. Niagra Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1357 (N.D. Ga. 2008) (Martin, J., *adopting* Hagy, M.J.), *aff'd*, 584 F.3d 1350 (11th Cir. 2009). To prevail on an FDCPA claim, a plaintiff must establish that

> (1) []he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011) (Thrash, J., *adopting* Baverman, M.J.) (punctuation omitted).

40

### a.   Debt Collector

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term does not include the assignee of a debt, so long as the debt was not in default at the time it was assigned. *LaCosta v. McCalla Raymer, LLC*, Civ. Action No. 1:10-CV-1171-RWS, 2011 WL 166902, at *6 (N.D. Ga. Jan. 18, 2011) (Story, J.); *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1484-86 (M.D. Ala. 1987) (analyzing the text and objectives of the FDCPA and concluding that the buyer of a defaulted debt falls outside the definition of "creditor").

Defendants contend that a letter BANA sent to Plaintiff on August 24, 2010, providing notice of transfer of the loan to BANA shows that "BANA began servicing the loan and/or received an assignment before Plaintiff's acknowledged default in November 2012" and that BANA was therefore Plaintiff's creditor and not a "debt collector." [Doc. 21-1 at 23; Doc. 27 ¶ 4; Doc. 27-1 at 31-32]. Plaintiff points out, however, that the only direct evidence of an assignment of any loan document to BANA that is presently in the record is the security-deed assignment that was executed

41

on March 26, 2013, more than three months after Plaintiff's admitted default. [Doc. 22 at 18-19 [citing Doc. 16-3 at 2]]. Although BANA has certified that the August 2010 letter was made and kept in the course of its regularly conducted business, it provides no authority suggesting that the contents of the letter—which was not even signed—may serve as conclusive evidence that BANA had indeed assumed the position of Plaintiff's servicer or creditor as of that date. [Doc. 27-1 at 4-5, 31-32]. Moreover, in its own review of the proffered evidence, the Court has found nothing conclusively showing BANA as the servicer earlier than December 2012, as admitted in Plaintiff's statement that BANA began servicing his loan in late 2012 and corroborated by the December 17, 2012, notice of intent to accelerate and foreclose. [Doc. 1-12 at 6; Doc. 16-5 at 2]. Consequently, the undersigned finds that Plaintiff has pleaded facts plausibly suggesting that BANA did not assume any right to demand payment upon the loan until after his admitted default and furthermore that BANA has not presented evidence sufficient to establish that no genuine issue of material fact remains as to the allegation. It would therefore be premature to find that BANA should be excluded from the definition of "debt collector" on that basis.

AO 72A
(Rev.8/8
2)

### b.      Debt-Collection Activity

Defendants next argue that foreclosing on a security interest does not constitute "debt collection" for the purposes of 15 U.S.C. § 1692g, or, in fact, for any section of the FDCPA other than § 1692f(6).  [Doc. 21-1 at 23 (citing *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460 (11th Cir. 2009); *LaCosta*, 2011 WL 166902 at *6; *Ziemba v. Am. Home Morg. Servicing, Inc.*, Civ. Action No. 1:10-CV-02781-RWS, 2011 WL 3420646, at *3 (N.D. Ga. Aug. 4, 2011) (Story, J.); *Georgia ex rel Saunders v. Mortg. Elec. Registration Sys., Inc.*, Civ. Action File No. 1:10-CV-3419-TWT-RGV, 2011 WL 1335824, at *8 (N.D. Ga. Mar. 11, 2011) (Vineyard, M.J., *adopted at* 2011 WL 1322616 (Thrash, J.))].

The Court is not persuaded by Defendants' arguments.  Review of the cases cited by Defendants reveals that they concerned generally pleaded FDCPA claims grounded in allegations of wrongful foreclosure.  The pleadings presently before the Court are not so limited.  As Plaintiff points out, exhibits incorporated into his complaint show not only that Defendants provided notice of default and of intent to accelerate on the loan and to initiate foreclosure proceedings, but also that they demanded payment of all late payments, charges, and fees.  [Doc. 22  at 19; Doc. 16-5 at 2 (letter dated December 17, 2012, from BANA to Plaintiff, stating that $2,976.16 was due by January 26, 2013, and

43

that if it did not receive "good funds" in that amount by that date, "the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full"); Doc. 16-7 at 2 (letter dated April 24, 2014, from Bayview to Plaintiff making a "formal demand to pay $24,658.30" and stating that if such payment was not received, Bayview "will take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property")].  In this circuit, entities that send notices such as these have been held to have engaged in "debt collection activity" on the note as well as enforcement of the security interest.  *See, e.g., Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012) (reversing dismissal of a claim raised under 15 U.S.C. § 1692e and explaining that a communication may have the dual purpose of attempting to collect upon a debt and of attempting to enforce a security interest); *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241-42 (11th Cir. 2012) (per curiam) (treating a notice as "an attempt at debt collection" within the meaning of the FDCPA and allowing a claim filed under § 1692e to go forward where the notice stated that it was "an attempt to collect a debt" and advised the consumer to contact the sender to find out the amount needed to bring the loan current or pay it off in full).  Thus, the Court finds that the amended complaint

AO 72A
(Rev.8/8
2)

contains sufficient pleadings of debt-collection practices such that Plaintiff's claims are not limited to those arising from violations of § 1692f.

### c.       *Acts or Omissions Prohibited by the FDCPA*

Defendants' argument that Plaintiff failed to cite any specific section of the FDCPA that was violated is more persuasive.  [*See* Doc. 21-1 at 21-22].  In response to Defendants' argument, Plaintiff states only that his FDCPA claims are supported by his allegations that Defendants falsely threatened legal action regarding the note and security deed, Defendants failed to inform him that he had a right to a face-to-face meeting, Defendants failed to arrange such a meeting, and BANA did not acquire the note and security deed until after the debt was in default.  [*See* Doc. 22 at 16-20; *see also* Doc. 16 ¶ 74].  He then goes on to state that "[c]onduct prohibited by the FDCPA includes harassing, oppressive or abusive conduct," (15 U.S.C. § 1692d); "the 'use of false, deceptive, or misleading representations or means in connection with the collection of any debt,' " (15 U.S.C. § 1692e); "the use of 'unfair or unconscionable means' to collect a debt," (15 U.S.C. § 1692f); and "failure to validate a debt," (15 U.S.C. § 1692g); and that this was "conduct in which Plaintiff contends BANA has engaged."  [Doc. 22 at 17].

45

The Court finds the pleadings insufficient for several reasons. First, as noted above, a party cannot amend a complaint by asserting new facts or theories in the brief responding to a motion to dismiss. *See supra* n.11 (citing *Fin. Sec. Assurance, Inc.*, 500 F.3d at 1284; *Long*, 181 F.3d at 1279-80; *Brown*, 2011 WL 1882522 at *5). Thus, Plaintiff cannot cure his failure to assert specific claims under the FDCPA by stating them in response to Defendants' motion to dismiss.

Moreover, Plaintiff does not state in the response to the motion to dismiss that he in fact intended to assert claims under 15 U.S.C. §§ 1692(d), (e), (f), or (g); instead, he generally states that those FDCPA provisions prohibit harassing, oppressive or abusive conduct; the use of false, deceptive, or misleading representations or means in connection with the collection of any debt; the use of 'unfair or unconscionable means' to collect a debt; and failure to validate a debt. [*See* Doc. 22 at 17]. He also fails to supply any link between Defendants' allegedly wrongful conduct and any provision of the FDCPA. [*See id.*]. Plaintiff is represented by counsel, [*see* Doc. 8], and even were he not represented, the Court may not make arguments on his behalf or act as his *de facto* counsel. *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 Fed. Appx. 274, 276 (11th Cir. Jan. 9, 2008) (noting that a court is not to act as counsel for a *pro se* party); *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)

46

("Yet even in the case of pro se litigants," a court does not have "license to serve as de facto counsel for a party . . . ."); *Ward v. United States*, 154 F.R.D. 291, 293 (M.D. Fla. 1994) (court refuses to supply argument for party).  Additionally, although it cannot technically be said that Plaintiff did not file a response to Defendants' motion to dismiss his FDCPA claim and therefore may be deemed not to oppose it, [*see* Doc. 22 at 17], it is certainly fair to say that Plaintiff waived his opportunity to oppose Defendants' motion when he failed to raise any argument against it.  *See Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 n.3 (11th Cir. Aug. 10, 2006) (per curiam) (finding that the plaintiff waived an issue by failing to elaborate on his argument or provide a citation to authority regarding the argument); *see also Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim).

Additionally, even if Plaintiff had properly asserted FDCPA claims before the Court, it is not at all clear that the facts Plaintiff has proffered are sufficient to state a plausible claim for relief under the FDCPA.  Even if BANA did misrepresent to Plaintiff at some point that BANA was the "investor" in Plaintiff's loan when the holder of the note was in fact Ginnie Mae, he has not explained how that

47

misrepresentation was made "in connection" with the collection of his debt within the context of the FDCPA.  [*See* Doc. 16 ¶ 74].  Likewise, even assuming that Defendants could not, by contract, accelerate the loan or initiate foreclosure proceedings without first conducting a face-to-face meeting with Plaintiff, it does not necessarily follow that Defendants were required under the FDCPA to remind Plaintiff of the agreed-upon contract provision or to arrange a face-to-face meeting prior to sending letters demanding payment of amounts undisputedly past due and providing notice of intent to accelerate the loan and initiate foreclosure proceedings if Plaintiff did not comply.

Finally, to the extent that Plaintiff intended to plead a claim under § 1692g, he has failed to state facts sufficient to raise a plausible claim.  "Under the FDCPA, if a consumer notifies a debt collector in writing that a debt is disputed, the collector must cease collection of that debt until the debt collector verifies the debt and mails a copy of the verification to the consumer."  *See Warren*, 342 Fed. Appx. at 460.  This is the case, however, only when the consumer notifies the debt collector in writing within thirty days of receiving notice of the debt and her right to dispute the debt or request verification of the original creditor.  15 U.S.C. § 1692g.

Plaintiff shows that BANA communicated with him in connection with the collection of the overdue debt starting on December 17, 2012, and that he received

48

notice of his dispute and verification rights as to the debt no later than September 16, 2013. [Doc. 16-5 at 1-4]. He reports, however, that it was not until January 13, 2014, that he sent a letter to BANA requesting the identity of the secured creditor on his loan, verification of the alleged debt, and a detailed accounting. [Doc. 16 ¶ 23]. Thus, Plaintiff has failed to plead facts showing that he sent his dispute and request for verification to Defendant within the thirty-day window prescribed under the FDCPA. Consequently, the undersigned finds that Plaintiff failed to plead facts sufficient to state a plausible claim that Defendant failed to validate the debt in violation of 15 U.S.C. § 1692g(b).

For all of these reasons, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion to dismiss Plaintiff's FDCPA claims (Count Five). [Doc. 21]. Because the undersigned concludes that Plaintiff has failed to allege a plausible claim for relief under the FDCPA, it is also **RECOMMENDED** that the District Judge **DENY AS MOOT** the remaining portion of Plaintiff's motions to permit discovery and hold Defendants' motion for summary judgment in abeyance, in which Plaintiff argues that discovery is necessary to establish Defendants' liability under the FDCPA. [Doc. 28].

49

### 4. *Violation of the Truth in Lending Act (Count Six)*

Plaintiff alleges that BANA violated TILA, specifically, 15 U.S.C. § 1641(f), by failing to properly respond to Plaintiff's request for the identity of the of the owner of his loan. [Doc. 16 ¶¶ 77-80]. The portion of TILA codified at 15 U.S.C. § 1641 provides, in pertinent part, that "[u]pon written request by the obligor [on an obligation arising from a consumer credit transaction], the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C. § 1641(f)(2).

Plaintiff alleges that on January 13, 2014, he sent a letter to BANA requesting the identity of the secured creditor on his loan; on January 31, 2014, BANA responded incorrectly by stating that BANA was the investor; that, in truth, it was Ginnie Mae, not BANA, that was the investor on the loan; and that it was "through a pattern of fraudulent concealment" that BANA failed to disclose the required information. [Doc. 16 ¶¶ 23-24, 76-79]. He contends that he is therefore "entitled to damages in an amount to be proven at trial." [*Id.* ¶ 80].

In its motion to dismiss, BANA generally contends that the claim is subject to dismissal because Plaintiff has not alleged a factual basis for each element of the claim.

50

[Doc. 21-1 at 24-25]. Plaintiff, in response, restates the text of § 1641(f)(2), repeats the factual statements appearing in the amended complaint, and argues that he has alleged sufficient facts to raise the right to relief above the speculative level. [Doc. 22 at 20-21].

Although the Court finds Defendants' argument is scant, at best, it is nevertheless clear that Plaintiff has not adequately pleaded his TILA claim. As noted above, the provision under which Plaintiff seeks to raise his TILA claim requires that upon the borrower's written request, "the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the *owner of the obligation* or the *master servicer* of the obligation." 15 U.S.C. § 1641(f)(2) (emphasis added). Plaintiff, however, does not state that he requested information identifying the owner or master servicer of the note, but rather that he requested "the identity of the *secured creditor* on his loan." [Doc. 16 ¶¶ 23, 79 (emphasis added)]. Thus, he has not pleaded facts showing that he in fact made a written request for the information he now complains was concealed from him in violation of TILA. Moreover, even presuming that the term "owner of the obligation" appearing in § 1641(f)(2) could be construed to be the equivalent of "secured creditor," Plaintiff's pleadings and admissions indicate that in January 2014, BANA was indeed the secured

51

creditor, as Plaintiff shows that MERS assigned the security deed to BANA on March 26, 2013, [Doc. 16 ¶ 10; Doc. 16-3 at 2], and he admits that BANA assigned the security deed to HUD on March 24, 2014, (Def. ¶ 6; Pl. Resp. ¶ 6).

The undersigned therefore **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion to dismiss as to the TILA claim alleged in Plaintiff's complaint (Count Six).  [Doc. 21].

### 5.    *Declaratory and Injunctive Relief (Counts One and Two)*

Counts One and Two seek equitable relief in the form of declaratory judgment and preliminary injunction, respectively.  Plaintiff asserts that the face-to-face meeting requirement is a condition precedent to initiating foreclosure on the Property and that because Defendants threatened foreclosure proceedings without first holding the face-to-face meeting or making a reasonable attempt to do so, he is presently in doubt and uncertain as to his rights and relations under the contract.  [Doc. 16 ¶ 42].  He therefore seeks an affirmative declaration that Defendants did not have a face-to-face interview with him or make any reasonable effort to arrange such a meeting; that Defendants "did not comply with the regulations of HUD and the . . . language contained in the parties' contract; that Defendants' compliance with HUD's regulations is a condition precedent to commencement of foreclosure proceedings; that Defendants

52

breached the obligation and prematurely commenced foreclosure proceedings against the Property; and that Bayview should be enjoined from commencing foreclosure proceedings until it has performed according to the parties' contract. [Doc. 16 ¶ 44]. Plaintiff also asserts that the Court should grant a preliminary injunction so that he may "conduct reasonable discovery into . . . events and transactions" relevant to Bayview's compliance with provisions of the loan contracts and the incorporated HUD provisions. [*Id.* ¶ 55].

Defendants contend that they are entitled to dismissal of the declaratory-judgment count because the amended complaint does not identify any specific reason declaratory relief would be appropriate in this instance, and they argue that no uncertainty exists about any future action by Plaintiff or Defendants because any claims Plaintiff could assert would arise from the note, security deed, and assignments, "all material rights have accrued based upon past events, " and thus "Plaintiff fails to plead the likelihood of future harm that would authorize this Court to exercise its power to issue a declaratory judgment." [Doc. 21-1 at 7]. Defendants further argue that the injunctive-relief count should be dismissed because there is no foreclosure sale scheduled, and therefore the request is not ripe, and because Plaintiff has not tendered security or the amounts owed. [*Id.* at 8-10].

53

Plaintiff, in turn, insists that he has adequately pleaded that "each of the Defendants, BANA and Bayview, have attempted or are attempting to foreclose on the property of Plaintiff and to illegally gain possession of his home . . . [by] threaten[ing] to foreclose and accelerate the debt without first complying with the required regulatory preconditions." [Doc. 22 at 5-6]. He further argues that he has sufficiently pleaded multiple claims against defendants and that it is therefore "obvious" that he will suffer irreparable injury if an injunction is not granted. [*Id.* at 6-7]. He also contends that tender is not required as to BANA because "there are no sums admittedly due to BANA." [*Id.* at 7].

The Declaratory Judgment Act, 28 U.S.C. § 2201 echoes the "case or controversy" requirement of Article III of the United States Constitution and provides that a declaratory judgment may only be issued in the case of an "actual controversy." *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012). In order to obtain a declaratory judgment, Plaintiff must allege facts showing that there is "a substantial continuing controversy between parties having adverse legal interests." *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985). The continuing controversy must be "real and immediate" and must "create a definite, rather than speculative threat of future injury." *Id*. at 1552. In other words, " '[i]n

54

order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking . . . declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.' " *Walden*, 669 F.3d at 1284 (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).

Similarly, to obtain a preliminary injunction Plaintiff must demonstrate that: (1) he has a substantial likelihood of success on the merits; (2) an irreparable injury will be suffered unless the injunction issues; (3) if the requested injunction is not issued, the plaintiff will suffer harm that would outweigh the harm suffered by the opposing party if issued; and (4) an injunction would not disserve the public interest. *Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014).  In order to qualify as irreparable, harm or injury must be "actual and imminent."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

As explained in section III.B.1., *supra*, where HUD regulations are incorporated by reference in the promissory note and/or the security deed, a mortgagor may have a cause of action against a defendant mortgagee for breach of contract.  Besides being entitled to damages for a claim for breach of contract, a mortgagor plaintiff may be entitled to injunctive relief. *Stewart v. Suntrust Mortg., Inc.*, 331 Ga. App. 635, 637-38,

55

770 S.E.2d 892, 896 (2015) ("'Where a grantee does not comply with the statutory duty to exercise fairly the power of sale in a deed to secure debt . . . the debtor may either seek to set aside the foreclosure or sue for damages for the tort of wrongful foreclosure.'") (quoting *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285, 285-86, 443 S.E.2d 837, 838 (1994)).

Here, however, the Court finds nothing in the amended complaint that shows Plaintiff is at risk of immediate harm or indeed that his claims for injunctive relief are ripe. Plaintiff shows that BANA sent him letters in December 2012, September 2013, and October 2013 notifying of him of his default, demanding payment of overdue amounts, and indicating intent to accelerate the loan and initiate foreclosure proceedings if he did not comply, [Doc. 16 ¶ 13; Doc. 16-5 at 4-8], and that Bayview sent him a similar letter in April 2014, [Doc. 16 ¶ 26; Doc. 16-7 at 2]. The pleadings do not state that Defendants accelerated the loan, advertised the Property for foreclosure, or notified Plaintiff of a sale date, however. [Doc. 16, *passim*]. The notice or advertisement with the sale date is a necessary requirement to commence and finalize a foreclosure. *See* O.C.G.A. §§ 44-14-162, 44-14-162.2. While Plaintiff is aware that Defendants may commence foreclosure proceedings, the facts as presented do not indicate that foreclosure is imminent. *Cf. Wilson v. BB&T Mortg.*, Civ. Action

56

No. 1:10-CV-1234-RWS, 2010 WL 4839372, at *3 (N.D. Ga. Nov. 23, 2010) (Story, J.) ("Lastly, Plaintiffs ask the Court to force Defendants to comply with O.C.G.A. § 44-14-162(b), however it appears that this issue is not ripe as a foreclosure sale is not imminent and, as a result, Plaintiffs' rights in such a sale have not been violated."); *Bates*, 768 F.3d at 1133 n.8 (observing that "it is important to note that Bates's complaint does not seek injunctive relief against any future foreclosure").

Pursuant to § 203.604, Defendants must hold the face-to-face meeting, or make a reasonable attempt to do so, at least thirty days prior to commencing foreclosure proceedings. 24 C.F.R. § 203.604(b). Likewise, the debtor must be given notice of the initiation of foreclosure proceedings at least thirty days before the date of the proposed foreclosure. O.C.G.A. § 44-14-162.2(a). Thus, even presuming that Plaintiff has a right to a face-to-face meeting before any foreclosure is commenced and that Defendants have in fact failed to hold the meeting, make a reasonable attempt to do so, or otherwise obtain exemption from the requirement, the trigger for that meeting has not yet occurred. In other words, unless and until Bayview notices or advertises a sale date, Plaintiff's claims regarding the failure to have the face-to-face meeting prior to the commencement of foreclosure are not ripe for adjudication.

AO 72A
(Rev.8/8
2)

"[T]he ripeness inquiry conflates with the preliminary injunction inquiry [and the declaratory judgment inquiry], for if the plaintiff['s] challenge is premature, *a fortiori* there is no [immediate or] irreparable injury." *Time Warner Entm't Co. L.P. v. F.C.C.*, 810 F. Supp. 1302, 1304 (D.D.C. 1992). Consequently, because Plaintiff's claims for declaratory judgment and preliminary injunctive relief are predicated upon Defendants' failure to arrange a face-to-face meeting with him prior to commencing a foreclosure that has yet to be scheduled, such claims are premature and not ripe, and therefore are subject to dismissal without prejudice in this action. *Georgia Advocacy Office, Inc. v. Camp*, 172 F.3d 1294, 1299 (11th Cir. 1999) (holding that if a claim is not ripe, the district court lacks jurisdiction to issue a ruling on the merits and therefore must dismiss that claim without prejudice).

The undersigned therefore finds that Plaintiff's claims for declaratory judgment and for a preliminary injunction both fail for lack of a sufficient showing of immediate harm. Accordingly, it is hereby **RECOMMENDED** that the District Judge **GRANT** Defendants' motion as to Counts One and Two of the amended complaint. [Doc. 21].

58

## IV.   *Conclusion*

For the reasons set forth above, the undersigned **RECOMMENDS** to the District Judge that the motion to dismiss / converted motion for summary judgment be **GRANTED**, [Doc. 21], and that Plaintiff's motion for discovery and motion to hold Defendants' motion for summary judgment in abeyance be **DENIED AS MOOT**, [Doc. 28].

Because this case presents no other issues referred to Magistrate Judges pursuant to Standing Order 14-01, the Clerk is hereby **DIRECTED** to **TERMINATE** reference to the undersigned.

**IT IS SO RECOMMENDED and DIRECTED**, this the 6th day of July, 2015.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

59