IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RONALD GEATHERS,

                         **Plaintiff,**

       **v.**

BANK OF AMERICA, N.A. and
BAYVIEW LOAN SERVICING,
LLC,

                         **Defendants.**

                                            **1:14-cv-850-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendants Bank of America, N.A.'s

("BANA") and Bayview Loan Servicing, LLC's ("Bayview") (together,

"Defendants") Partial Objections [33], and Plaintiff Ronald Geathers' ("Plaintiff")

Partial Objections [34], to Magistrate Judge Alan J. Baverman's Final Report and

Recommendation ("R&R") [31].  The Magistrate Judge recommends that

Defendants' Motion to Dismiss [21] Plaintiff's Amended Complaint [16] be

granted, that the Court decline to grant summary judgment to Defendants, and that

Plaintiff's Motion for Discovery and Motion to Hold Defendants' Motion for

Summary Judgment in Abeyance [28] be denied as moot.

## I.   BACKGROUND[1]

On July 23, 2010, Plaintiff obtained a loan in the amount of $186,397.00,

from Fidelity Bank d/b/a Fidelity Bank Mortgage ("Fidelity") and executed a

promissory note ("Note") in favor of Fidelity.  (Am. Compl. ¶¶ 8-9 & Ex. A).  The

Note provides, in relevant part:

> **6.   BORROWER'S FAILURE TO PAY**
> . . .
> **(B)  Default**
> If Borrower defaults by failing to pay in full any monthly
> payments, then Lender may, except as limited by regulations of the
> Secretary [of Housing and Urban Development ("HUD")] in the case
> of payment defaults, require immediate payment in full of the
> principal balance remaining due and all accrued interest. . . .  In many
> circumstances regulations issued by the Secretary will limit Lender's
> rights to require immediate payment in full in the case of payment
> default.  This Note does not authorize acceleration when not permitted
> by HUD regulations.

(Note at 2).

Repayment of the loan was also secured by a deed ("Security Deed") to real

property located at 610 Vista Terrace, Stone Mountain, Georgia (the "Property").

(Am. Compl. ¶ 9 & Ex. B).  Plaintiff executed the Security Deed in favor of

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Fidelity

---

[1]      The facts are taken from the R&R and the record.  The parties did not object
to any facts set out in the R&R, and finding no plain error in the Magistrate
Judge's findings, the Court adopts them.  See Garvey v. Vaughn, 993 F.2d 776,
779 n.9 (11th Cir. 1993).

and Fidelity's successors and assigns.  (Id.).  Under the terms of the Security Deed,

Plaintiff "grant[ed] and convey[ed] to MERS (solely as nominee for [Fidelity] and

[Fidelity's] successors and assigns), and the successors and assigns of MERS, with

power of sale, the [Property]."  (Security Deed at 2).  The Security Deed also

provides, in pertinent part:

> **9.  Grounds for Acceleration of Debt.**
> **(a)  Default.**  Lender may, except as limited by regulations issued
> by the Secretary [of HUD] in the case of payment defaults, require
> immediate payment in full of all sums secured by this Security
> [Deed] if:
>> (i)  Borrower defaults by failing to pay in full any monthly
>> payment required by this Security [Deed] prior to or on the due
>> date of the next monthly payment . . . .
>> . . .
> **(d)  Regulations of HUD Secretary.**  In many circumstances
> regulations issued by the Secretary will limit Lender's rights, in the
> case of payment defaults, to require immediate payment in full and
> foreclose if not paid.  This Security [Deed] does not authorize
> acceleration or foreclosure if not permitted by regulations of the
> Secretary.

(Id. at 4-5; Am. Compl. ¶ 17).

At some point, BANA became Plaintiff's loan servicer.  In November 2012,

Plaintiff "experienced difficulty meeting his payments on the loan."  (Id. ¶ 12).  He

"requested mortgage relief assistance from BANA but was . . . denied."  (Id.).

On December 17, 2012, BANA, on behalf of the holder of the Note, sent

Plaintiff a "Notice of Intent to Accelerate and Foreclose," which states that

Plaintiff had defaulted on his loan obligations, that the total amount required to cure the default was $2,976.16, and that, if the default was not cured on or before January 26, 2013, the entire balance of his loan would be accelerated and foreclosure proceedings would be initiated.  (Id. ¶ 13 & Ex. E at 2-3).

On March 26, 2013, MERS assigned the Security Deed to BANA.  (Id. ¶ 10 & Ex. C).

On May 10, 2013, BANA sent Plaintiff a letter which identifies BANA as Plaintiff's loan servicer and states that ownership of Plaintiff's loan had been transferred to BANA on May 1, 2013.  (Id. ¶ 11 & Ex. D).

On September 16, 2013, BANA sent Plaintiff a "Notice of the Right to Cure the Default and Intent to Accelerate," which states that Plaintiff's loan is past due for all required monthly payments beginning with the November 1, 2012, payment, that the amount required to cure the default was $15,358.54, and that if the default was not cured on or before October 26, 2013, "the mortgage payments will be accelerated with the full amount of the loan becoming due and payable in full, and foreclosure proceedings will be initiated at that time."  (Id. ¶ 13 & Ex. E at 4-5).

On October 25, 2013, BANA sent Plaintiff a letter stating that his "mortgage loan payment is past due and [the P]roperty may be referred to foreclosure unless immediate action is taken."  (Id. ¶ 13 & Ex. E at 6-8).  The letter states further that

BANA is Plaintiff's loan servicer and the holder of the Note, that foreclosure proceedings will be initiated by BANA, that the total amount needed to reinstate or to bring Plaintiff's account current is $16,730.30, that the date through which the account is paid is October 25, 2012, and the amount of outstanding principal on the loan is $179,988.34.  (Id.).  The letter also states that, upon written request, Plaintiff is entitled to receive a copy of his payment history, a copy of the Note, the name of the investor that holds his loan, and copies of the assignment of his mortgage required to demonstrate BANA's right to foreclose.  (Id.).

On January 13, 2014, Plaintiff sent BANA a letter requesting, among other things, "the identity of the secured creditor on his loan, verification of the alleged debt, and a detailed account."  (Am. Compl. ¶ 23; Compl. at Ex. L [1.12]).

On January 23, 2014, BANA responded to Plaintiff's letter by identifying BANA as Plaintiff's loan servicer and the "investor, or owner of [his] loan." (Compl. at Ex. M2 [1.13 at 2-3]).  BANA also provided contact information for BANA, in its capacity as loan servicer and as the investor on Plaintiff's loan.  (Id.).

Plaintiff asserts that "BANA responded on January 31, 2013, by advising the Plaintiff, among other things, that the investor on Plaintiff's loan was BANA when, in truth, the investor on Plaintiff's loan was Government National Mortgage Association ('Ginnie Mae'), and not BANA."  (Am. Compl. ¶ 24).  Plaintiff claims

that, "to date, BANA has not provided Plaintiffs [sic] with the true identity of the owner of Plaintiffs' [sic] loan." (Id.).

On March 24, 2014, BANA assigned the Security Deed to HUD. (Defs' Stmt. of Undisputed Material Fact ("SUMF") ¶ 6; Pl's Resp. to SUMF ¶ 6).

On April 1, 2014, HUD assigned the Security Deed to Bayview. (SUMF ¶ 7; Pl's Resp. to SUMF ¶ 7).

On April 10, 2014, Bayview sent Plaintiff a letting stating that Bayview became Plaintiff's loan servicer on April 1, 2014. (Am. Compl. ¶ 25 & Ex. F).

On April 24, 2014, Bayview sent Plaintiff a "Notice of Default and Intent to Accelerate," stating that Plaintiff had defaulted on his loan obligations, that the amount required to cure the default is $24,658.30, and that, if the default is not cured by May 24, 2014, Bayview will initiate foreclosure proceedings. (Id. ¶ 26 & Ex. G).

On March 25, 2014, Plaintiff, proceeding *pro se*, filed his Complaint [1] against BANA. He later obtained counsel and the Court granted Plaintiff leave to amend his Complaint.

On October 9, 2014, Plaintiff, represented by counsel, filed his Amended Complaint, which also adds Bayview as a defendant. Plaintiff asserts claims against Defendants for declaratory and injunctive relief (Counts I and II), breach of

contract (Count Three), and negligence *per se* (Count Four).  The crux of these claims is that Defendants failed to comply with certain HUD regulations, incorporated by reference into Plaintiff's Note and Security Deed and which are prerequisites to foreclosure.  Specifically, Plaintiff asserts that Defendants failed to comply with 24 C.F.R. §§ 203.604(b), 203.606(a), because "neither BANA nor Bayview had a face-to-face interview with Plaintiff or made any effort whatsoever to arrange such a meeting prior to commencing foreclosure proceedings against the Plaintiff . . . ."  (Am. Compl. ¶ 27).[2]

Plaintiff also asserts a claim against Defendants for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Count Five), and a claim against BANA for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. (Count Six).  Plaintiff alleges that Defendants violated the FDCPA by "ma[king] misleading representations in connection with the debt secured by the Security Deed," because they "wrongfully threatened legal action and failed to inform Plaintiff that Plaintiff had a right to a face-to-face meeting and/or failed to arrange such a meeting," and because "BANA misrepresented to

---

[2]      Section 203.604(b) provides that "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." 24 C.F.R. § 203.604(b).  Section 203.606(a) provides that "[b]efore initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met."  24 C.F.R. § 203.606(a).

Plaintiff that BANA was the investor on Plaintiff's loan, when the true investor of Plaintiff's loan was Ginnie Mae."  (Id. ¶¶ 73-74).  In support of his TILA claim, Plaintiff asserts that "BANA has failed, through a pattern of fraudulent concealment, to disclose [the name, address, and telephone number of the owner of the obligation], despite Plaintiff's January 13, 2014, request."  (Id. ¶¶ 78-79).

On October 23, 2014, Defendants moved to dismiss Plaintiff's Amended Complaint on the grounds that certain letters showed that BANA had substantially complied with the face-to-face meeting requirement or should be excused from such compliance, and that Plaintiff otherwise had failed to plead a plausible claim for relief.  In his Response, Plaintiff asserted that the Court could not consider the letters Defendants submitted with their motion without converting Defendants' motion to a motion for summary judgment.

On April 7, 2015, Magistrate Judge Baverman notified the parties of the Court's intent to treat Defendants' Motion to Dismiss as a Motion for Summary Judgment, "so far as the motion seeks dismissal of Plaintiff's claims on the grounds that Defendants complied with 24 C.F.R. § 203.604 and offered Plaintiff a trial payment plan that he then refused," and provided the parties the opportunity to present evidence on those issues.  (Apr. 7th Order [26]).

On April 28, 2015, Defendants filed their Statement of Undisputed Material

Facts.  On May 19, 2015, Plaintiff responded and filed his Motion for Discovery.

On July 6, 2015, Magistrate Judge Baverman issued his R&R,

recommending that Defendants' Motion to Dismiss be granted and Plaintiff's

Motion for Discovery be denied.  The Magistrate Judge found that genuine issues

of material fact exist as to whether Defendants complied with 24 C.F.R. § 203.604,

and whether Plaintiff would have cooperated in the face-to-face interview had he

been given the opportunity.  Although he recommended that the Court decline to

grant summary judgment to Defendants on these grounds, Magistrate Judge

Baverman found that Plaintiff failed to state a claim for relief and recommended

that Defendants' Motion to Dismiss be granted.

The parties timely filed their objections to the R&R.

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   Review of a Magistrate Judge's R&R

After conducting a careful and complete review of the findings and

recommendations, a district judge may accept, reject, or modify a magistrate

judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams

v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).

A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal quotation marks omitted).  With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

Defendants object to the portions of the R&R addressing Defendants' converted motion for summary judgment and recommending that it be denied. (Defs' Objs. [33]).  Because the Court finds that Plaintiff's Amended Complaint fails to state a claim for relief and thus is required to be dismissed, the Court does not consider whether genuine issues of material fact exist regarding Defendants' compliance with 24 C.F.R. § 203.604, or whether Plaintiff would have cooperated in the face-to-face interview had he been given the opportunity.  The Court sustains Defendants' objection to the R&R on the basis that dismissal for failure to state a claim renders summary judgment issues moot.[3]

---

[3]      Having found that the summary judgment issues are moot, the Court does

In his Objections, Plaintiff objects only to the Magistrate Judge's recommendation that Plaintiff's FDCPA and TILA claims be dismissed, and the Court reviews these portions of the R&R *de novo*.  The Court conducts a plain error review of the remaining portions of the R&R.

### 2. Motion to Dismiss for Failure to State a Claim

Dismissal of a complaint, pursuant to Rule 12(b)(6), is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); see also Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  The Court is not required to accept a plaintiff's legal conclusions as true.  See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), abrogated on other grounds by Mohamad v. Palestinian Auth., — U.S. —, 132 S. Ct. 1702 (2012).  The Court also will not "accept as true a legal conclusion

_____

not consider Defendants' objections to the Magistrate Judge's findings regarding the admissibility of certain documents submitted in support of summary judgment.

couched as a factual allegation." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint, ultimately, is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly,   550 U.S. at 570.

To state a plausible claim for relief, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557); see also Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 680 (11th Cir. 2014) (noting that Conley's "no set of facts" standard has been overruled by Twombly, and a complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").  "A complaint is insufficient if it 'tenders naked assertions devoid of further factual enhancement.'" Tropic Ocean Airways, Inc. v. Floyd, 598 F. App'x 608, 609 (11th Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms.,

12

372 F.3d 1250, 1263 (11th Cir. 2004); see also White v. Bank of America, NA,

597 F. App'x 1015, 1018 (11th Cir. 2014) ("[C]onclusory allegations, unwarranted

deductions of facts or legal conclusions masquerading as facts will not prevent

dismissal.") (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188

(11th Cir. 2002)).[4]

    B.    Analysis

        1.    Violation of the FDCPA (Count Five)

The FDCPA prohibits debt collectors from, among other things, using "false,

deceptive, or misleading representation or means in connection with the collection

of any debt."  15 U.S.C. § 1692e.  To state a claim for relief under Section 1692e, a

plaintiff must allege that: (1) the defendant is a "debt collector;" (2) the challenged

conduct is related to debt collection activity; and (3) the defendant engaged in an

act or omission prohibited by the FDCPA.  Gardner v. TBO Capital LLC,

986 F. Supp. 2d 1324, 1332 (N.D. Ga. 2013) (citing Reese v. Ellis, Painter,

Ratteree & Adams, LLP, 678 F.3d 1211, 1216 (11th Cir. 2012); Frazier

v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011)).

---

[4]    Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short
and plain statement of the claim showing that the pleader is entitled to relief."
Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal
minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that
"[f]actual allegations must be enough to raise a right to relief above the speculative
level . . . ."  Twombly, 550 U.S. at 555.

Plaintiff fails to specify any provision of the FDCPA Defendants allegedly violated.  Plaintiff conclusorily asserts that Defendants "made misleading representations in connection with the debt secured by the Security Deed," "[s]pecifically, [they] wrongfully threatened legal action and failed to inform Plaintiff that Plaintiff had a right to a face-to-face meeting and/or failed to arrange such a meeting."  (Am. Compl. ¶ 73).  Plaintiff does not describe when the alleged misleading representations were made, the substance of those representations, or the "legal action" threatened.[5]  To the extent Plaintiff argues that Defendants made misleading representations because they did not disclose that they were required under 24 C.F.R. §§ 203.604(b), 203.606(a), to conduct a face-to-face meeting with Plaintiff before foreclosure, this "misrepresentation" invention is illogical.  It is not a misrepresentation to not disclose a requirement imposed upon a lender, especially where, as here, the absence of notice of the lender's obligation did not impact or prejudice Plaintiff in any way.

Even if, as Plaintiff claims, BANA misrepresented that it was the "investor" on Plaintiff's loan when the "true investor" was Ginnie Mae, Plaintiff fails to show how this alleged misrepresentation was made "in connection" with collection of

---

[5]    To the extent Plaintiff bases his FDCPA claim on letters BANA sent him in 2012, Plaintiff filed his Complaint on March 25, 2014, and FDCPA claims must be brought within one year of the date on which the violation occurred.  See 15 U.S.C. § 1692k(d).

Plaintiff's debt.  See 15 U.S.C. § 1692e (prohibiting a "misleading representation or means *in connection with the collection of any debt*") (emphasis added).  To the extent Plaintiff intended to assert a claim under Section 1692g, Plaintiff fails to show that he disputed the debt and requested the name and address of his creditor within thirty (30) days of receiving from BANA the written notice of his rights.  Section 1692g provides:  "If the consumer notifies the debt collector in writing within the thirty-day period [after receiving a written notice of his rights under the FDCPA]. . . that the debt . . . is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt . . . until . . . a copy of such verification . . . or name and address of the original creditor, is mailed to the consumer by the debt collector."  15 U.S.C. § 1692g(b).  The letters Plaintiff submits with his Amended Complaint show that BANA communicated with Plaintiff about his overdue debt on December 17, 2012; that no later than September 16, 2013, BANA sent Plaintiff notice of his right to dispute the debt; and that Plaintiff sent his letter requesting the identity of the secured creditor of his loan on January 13, 2014, nearly four (4) months after BANA's September 16, 2013, notice.  Plaintiff cannot state a claim for violation of the FDCPA based on Section 1692g.

Plaintiff fails to show that Defendants have engaged in an act or omission

prohibited by the FDCPA, and this claim is required to be dismissed.  See, e.g., 15 U.S.C. §§ 1692e, 1692g; Gardner, 986 F. Supp. 2d at 1332.  Plaintiff's objection to the R&R on this ground is overruled.

### 2.  Violation of TILA (Count Six)

Plaintiff alleges that BANA violated TILA, specifically 15 U.S.C. § 1641(f), by failing to properly respond to Plaintiff's request for the identity of the owner of his loan.  (Am. Compl. ¶¶ 78-79).  15 U.S.C. § 1641(f)(2) provides that, "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the *owner of the obligation* or the master servicer of the obligation."  15 U.S.C. § 1641(f)(2) (emphasis added).

 Plaintiff's January 13, 2014, letter, is not a valid request under Section 1641(f)(2) because, in it, Plaintiff requests "the identity of the *secured creditor* on his loan," not the name of the *owner of the obligation*.  (Compare Am. Compl. ¶¶ 23, 79 with 15 U.S.C. § 1641(f)(2)) (emphasis added).  Even if the term "owner of the obligation" could be construed as the equivalent of "secured creditor," the facts support that, in January 2014, BANA was Plaintiff's secured creditor.  On March 26, 2013, MERS assigned the Security Deed to BANA, and BANA did not assign the Security Deed to HUD until March 24, 2014—two (2) months after

BANA's response to Plaintiff's January 13, 2014, letter.  Plaintiff fails to state a

claim for violation of TILA, and this claim is required to be dismissed.  Plaintiff's

objection to the R&R on this ground is overruled.[6]

### 3.   Breach of Contract (Count Three)

To assert a claim for breach of contract under Georgia law, a plaintiff must

show (1) a valid contract; (2) material breach of its terms; and (3) damages arising

from that breach.  See Budget Rent-A-Care of Atlanta, Inc. v. Webb, 469 S.E.2d

712, 713 (Ga. Ct. App. 1996); see also Bates v. JPMorgan Chase Bank, NA,

768 F.3d 1126, 1130 (11th Cir. 2014).  Here, Plaintiff alleges that Defendants

---

[6]      To the extent Plaintiff argues, for the first time in his Objections, that his
TILA claim should not be dismissed because "[t]he allegations of Plaintiff's
complaint would still fall . . . within the provisions of § 1641(g), requiring
Defendants to notify Plaintiff of a transfer in ownership of the loan," this argument
is not properly before the Court and the Court will not consider it.  Cf. Huls
v. Liabona, 437 F. App'x 830, 832 n.4 (11th Cir. 2011) (per curium) (argument not
properly raised where plaintiff asserted it for the first time in response to
defendant's motion to dismiss, instead of seeking leave to file an amended
complaint).  Although courts have construed additional allegations in a *pro se*
plaintiff's response as a motion to amend the complaint, Plaintiff is represented by
counsel and has once amended his complaint with the assistance of counsel.
Compare Newsome v. Chatham Cnty. Det. Cntr., 256 F. App'x 342, 344 (11th Cir.
2007) ("Because courts must construe *pro se* pleadings liberally, the district court
should have considered [plaintiff's] additional allegations in the objection as a
motion to amend his complaint and granted it.") with Rule v. Chase Home Fin.
LLC, No. 3:11-cv-146, 2012 WL 1833394, at *4 (M.D. Ga. May 18, 2012)
("Plaintiff is not proceeding *pro se*, and therefore this Court is under no obligation
to construe these additional allegations as a motion to amend the Complaint.").
Even if it were properly before the Court, Plaintiff fails to identify any transfer in
ownership of the loan of which Plaintiff was not notified.

breached the Note and Security Deed by failing to conduct a face-to-face meeting with Plaintiff before initiating foreclosure proceedings, and, as a result, "Plaintiff has suffered mental anguish, emotional pain and suffering and damage to his credit and reputation . . . ."  (Am. Compl. ¶ 63).

Plaintiff did not object to the Magistrate Judge's conclusion that Plaintiff failed to allege facts to support that Defendants' alleged breach in failing to conduct a face-to-face meeting with Plaintiff resulted in his damages.  The Magistrate Judge found that damages for mental anguish and emotional pain and suffering cannot be recovered in a breach of contract claim and, because it is undisputed that Plaintiff had already defaulted on his loan obligations when the alleged breach occurred, that Defendants reported Plaintiff's default to credit bureaus was the result of Plaintiff's failure to make his loan payments, not the result of Defendants' alleged breach.  See Cummings v. Prudential Ins. Co. of Am., 542 F. Supp. 838, 841 (S.D. Ga. 1982) (under Georgia law, damages for mental suffering arising out of breach of contract, absent breach of a duty independent of contract, are not recoverable); Bates, 768 F.3d at 1132-33 (Mortgagor "must show that the premature or improper exercise of some power under the deed . . . resulted in damages that would not have occurred but for the breach."); Rourk v. Bank of Am., N.A., 587 F. App'x 597 (11th Cir. 2014) (mortgagor's failure to make loan

payments "is fatal to her claim for breach of contract and wrongful foreclosure, as her 'alleged injury was solely attributable to her own acts or omissions.'") (quoting Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 845 (Ga. Ct. App. 2004)).[7]  The Magistrate Judge recommended that Plaintiff's breach of contract claim be dismissed pursuant to Rule 12(b)(6), and the Court finds no plain error in this recommendation.  See Bates, 768 F.3d at 1130.

4.    Negligence (Count Four)

Plaintiff did not object to the Magistrate Judge's conclusion that Plaintiff failed to state a claim for negligence because, like his breach of contract claim, Plaintiff did not allege any facts to support that Defendants' alleged negligence in failing to conduct a face-to-face meeting with Plaintiff prior to foreclosure resulted in his damages.  The Magistrate Judge recommended that Plaintiff's negligence claim be dismissed pursuant to Rule 12(b)(6), and the Court finds no plain error in this recommendation.  See Bradley Ctr., Inc. v. Wessner, 296 S.E.2d 693, 695 (Ga. 1982) (to support a negligence claim in Georgia, plaintiff must allege, among others, a causal connection between defendant's breach of a standard of conduct

---

[7]    The Magistrate Judge found further that, under the terms of the Security Deed, Plaintiff has a right to reinstate his loan even after foreclosure has been initiated, and "because all [Plaintiff] must do, even now, is simply pay all of the outstanding monthly payments and associated fees admittedly owed, [Defendants'] exercise of the power to accelerate the [N]ote could not have caused [Plaintiff] harm . . . ."  (R&R at 34-35) (quoting Bates, 768 F.3d at 1133).

and the resulting injury, and damage flowing to plaintiff as a result of the breach).

The Magistrate Judge also found that there is no private right of action for violation of HUD regulations, see Bates, 768 F.3d at 1130, and Defendants' alleged negligent acts all arise from the duties created by the Note and Security Deed.  Because Plaintiff fails to show that Defendants breached a duty owed to Plaintiff independent of the Note and Security Deed, the Magistrate Judge recommended that Plaintiff's negligence claim be dismissed for this additional reason, and the Court finds no plain error in this recommendation.  See Wallace v. State Farm Fire & Cas. Co., 539 S.E.2d 509, 512 (Ga. Ct. App. 2000) ("Absent a legal duty beyond the contract, no action in tort may lie upon an alleged breach of contractual duty."); Fielbon Dev. Co. v. Colony Bank of Houston Cnty., 660 S.E.2d 801, 808 (Ga. Ct. App. 2008) ("A defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law.").

5.   Declaratory Judgment and Injunctive Relief (Counts One and Two)

Plaintiff seeks a declaration that Defendants did not have a face-to-face interview with Plaintiff before foreclosure, that as a result, Defendants did not comply with HUD requirements or the Security Deed, and foreclosure is therefore

premature and should be enjoined until Defendants comply with HUD regulations. (Am. Compl. ¶ 44; see also Am. Compl. ¶¶ 45, 47-58).  Plaintiff did not object to the Magistrate Judge's conclusion that, because Plaintiff's claims for declaratory judgment and injunctive relief are based on Defendants' alleged failure to arrange a face-to-face meeting before commencing a foreclosure sale, and because the foreclosure sale has not yet been scheduled, these claims are premature and not ripe for consideration.  The Magistrate Judge recommended that these claims be dismissed, and the Court finds no plain error in this recommendation.  See Emory v. Peeler, 756 F.2d 1547, 1551-52 (11th Cir. 1985) (to obtain a declaratory judgment, plaintiff must allege facts to show a "substantial continuing controversy between parties having adverse legal interests;" the controversy must be "real and immediate" and must "create a definite, rather than speculative threat of future injury."); Am.'s Health Ins. Plans v. Hudgens, 742 F.3d 1319, 1329 (11th Cir. 2014) (to obtain a preliminary injunction, plaintiff must show, *inter alia*, that irreparable injury will be suffered unless the injunction is issued); Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (to qualify as irreparable, harm or injury must be "actual and imminent"); Time Warner Entm't Co. L.P. v. F.C.C., 810 F. Supp. 1302, 1304 (D.D.C. 1992) ("[T]he ripeness inquiry conflates with the preliminary injunction inquiry [and the declaratory judgment inquiry], for if the

challenge is premature, *a fortiori* there is no [immediate or] irreparable injury.").[8, 9]

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Objections [33] are

**SUSTAINED IN PART**.  Defendants' objection to the Magistrate Judge's

consideration of the summary judgment issues is sustained.  Defendants' objection

to the Magistrate Judge's findings regarding the admissibility of some documents

submitted in support of summary judgment is moot and thus overruled.

**IT IS FURTHER ORDERED** that Plaintiff's Objections [34] are

**OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Alan J. Baverman's

Final Report and Recommendation [31] is **ADOPTED IN PART**.  It is adopted

---

[8]     The Court also notes that, because it is undisputed that Plaintiff already defaulted on his loan obligations and Defendants already allegedly breached the contract, no uncertainty exists about any future action by Plaintiff, and Plaintiff's claim for declaratory relief is required to be dismissed for this additional reason. See Milani v. One West Bank FSB, 491 F. App'x 977, 979 (11th Cir. 2012) (declaratory judgment is unavailable because 'all material rights have accrued based on past events and what Plaintiff seeks is an advisory opinion on the validity of the future act of another party.").

[9]     A claim for preliminary injunctive relief requires a showing of "a substantial likelihood of success on the merits of the underlying case," Grizzle v. Kemp, 634 F.3d 1314, 1320 (11th Cir. 2011), while a permanent injunction requires actual success on the merits, United States v. Endotec, Inc., 563 F.3d 1187, 1194 (11th Cir. 2009).  Plaintiff fails to state a viable claim for relief and his claim for injunctive relief is required to be dismissed for this additional reason.

with respect to the findings that Plaintiff fails to state a claim for relief and Defendant's Motion to Dismiss [21] is **GRANTED.**  Having granted Defendants' Motion to Dismiss, the portions of the R&R addressing the summary judgment issues are **DEEMED MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Discovery and Motion to Hold Defendants' Motion for Summary Judgment in Abeyance [28] is **DENIED AS MOOT**.


**SO ORDERED** this 27th day of August, 2015.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE